COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


ROBERT LYNN SINK
                                           OPINION BY
v.         Record No. 0225-98-3      JUDGE SAM W. COLEMAN III
                                         DECEMBER 15, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Clifford R. Weckstein, Judge

          Randy V. Cargill (Magee, Foster, Goldstein &
          Sayers, P.C., on brief), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     Robert L. Sink was convicted in a bench trial of driving

after having been declared an habitual offender as a subsequent

offense in violation of Code § 46.2-357.  Sink contends that

because he was a Florida resident and possessed a valid Florida

driver's license, the evidence was insufficient to convict him.

Because obtaining a Florida operator's license did not restore

Sink's privilege to drive in Virginia, we find the evidence

sufficient to sustain the conviction and affirm the trial court's

ruling.

                         BACKGROUND

     On September 2, 1975, Sink was adjudicated an habitual

offender and was barred from operating a motor vehicle on the

highways of the Commonwealth for ten years and "until permitted

to do so by an order of a court of competent jurisdiction."  In

1978 and again in 1987, Sink was convicted of driving after having been declared an habitual offender.

In December 1995, Sink moved to Florida, where he obtained a driver's license. According to Sink, he first obtained a Virginia license but two days later the Virginia division of motor vehicles informed him that it was invalid. Sink testified that he surrendered his Virginia license to the Florida division of motor vehicles, attended an alcohol safety program, and satisfactorily completed a psychiatric evaluation that indicated he was capable of driving. Sink testified that after he obtained a Florida license he believed he was authorized to drive in Virginia. He explained that, after completing all licensing requirements imposed by Florida, he understood that the Florida division of motor vehicles had informed Virginia of his status as a licensed driver. He concedes that his privilege to drive had not been restored by a Virginia court pursuant to Code § 46.2-356.

In 1997, when Sink traveled to Roanoke, a Roanoke city police officer stopped Sink and charged him with driving after having been declared an habitual offender. Sink was convicted of a second or subsequent offense of driving after having been declared an habitual offender and appeals that conviction.

The issue is whether the evidence is sufficient to convict Sink of driving after having been adjudged an habitual offender where the undisputed evidence proved that Sink was a Florida

resident, had obtained a valid Florida operator's license, and more than ten years had elapsed since Sink had been adjudged an habitual offender.

## ANALYSIS

Whether Sink was guilty of violating the order declaring him an habitual offender and prohibiting him from driving requires reconciliation of the habitual offender statutes and the statute exempting nonresidents from the requirement of obtaining a Virginia license to drive in Virginia. Resolution of this issue depends upon the interpretation of Code §§ 46.2-356, 46.2-357 and 46.2-307. Although the trial court's findings of historical fact are binding on appeal unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions de novo. See Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998).

Code § 46.2-357 defines the felony of driving after having been adjudicated an habitual offender: "It shall be unlawful for any person to drive any motor vehicle . . . on the highways of this Commonwealth while the revocation of the person's driving privilege remains in effect." Code § 46.2-356 provides the period during which an habitual offender may not be relicensed: "No license to drive . . . shall be issued to an habitual offender (i) for a period of ten years from the date of any final order . . . finding the person to be an habitual offender and (ii) until the privilege of the person to drive . . . has been

restored by an order of a court entered in a proceeding as provided in this article."

Code § 46.2-307 states: "A nonresident over the age of sixteen years who has been duly licensed as a driver under a law requiring the licensing of drivers in his home state or country . . . shall be permitted, without a Virginia license, to drive a motor vehicle on the highways of the Commonwealth." Sink argues that while Code §§ 46.2-356 and 46.2-357 appear to forbid him from driving, Code § 46.2-307 specifically authorizes him to drive in Virginia.

Sink argues that the statute authorizing a nonresident licensee to drive in Virginia is clear and admits of no exception. He contends the two statutes are not in conflict and that the habitual offender statute does not apply to a nonresident licensee authorized to drive pursuant to Code § 46.2-307. The principles governing statutory interpretation are well established:

> "`[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent.'" In interpreting statutes, "courts should give the fullest possible effect to the legislative intent embodied in the entire statutory enactment." To do so, "[t]wo statutes which are closely interrelated must be read and construed together and effect given to all their provisions." Potentially conflicting statutes should be harmonized to give force and effect to each.

Zamani v. Commonwealth, 26 Va. App. 59, 63, 492 S.E.2d 854, 856 (1997) (citations omitted). Applying these principles of

statutory construction, we hold that Code § 46.2-307 does not authorize a nonresident licensee to drive in Virginia in direct violation of an habitual offender order.

The habitual offender statutes, particularly the statute defining the felony of driving after having been declared an habitual offender, Code § 46.2-357, and the statute authorizing a nonresident licensee to drive in Virginia, Code § 46.2-307, are not in conflict.  They address different areas of concern.  The latter applies to licensure; the former applies to revoking a person's privilege to drive in Virginia regardless of licensure and irrespective of whether the person is a resident or nonresident.  The habitual offender statute expressly applies to both "resident[s] or nonresident[s]."  Code § 46.2-351.  Code § 46.2-300 prohibits driving without a license.  A resident or nonresident who possesses a valid license is not in violation of Code § 46.2-300.  However, if the person's privilege to drive in Virginia has been revoked upon having been declared an habitual offender, the privilege can be restored only by a court of competent jurisdiction pursuant to Code §§ 46.2-358 through 46.2-361.  Obtaining or possessing a valid out-of-state operator's license does not restore an habitual offender's privilege to drive in Virginia.  Thus, although Florida may legitimately issue Sink a Florida driver's license, its action does not affect Sink's status as an habitual offender in Virginia because Florida has no authority to declare that Sink is not an

habitual offender in Virginia. In accordance with the plain language of Code § 46.2-361, only a Virginia court may restore an habitual offender's privilege to drive, and neither the Virginia nor the Florida division of motor vehicles has authority to do so.

Code § 46.2-307, which concerns a nonresident's license to drive, has no bearing on habitual offenders or on the definition of the felony of driving after having been declared an habitual offender. Code § 46.2-307 does not address the privilege of an habitual offender to drive in Virginia. Neither the explicit language nor the logical implications of the statute authorizes other states to restore an habitual offender's privilege to drive after a Virginia court has revoked it.

Therefore, because Sink had not had his privilege to drive in Virginia restored, he continued to be an habitual offender and the fact that he possessed a valid Florida operator's license did not restore his privilege to drive in Virginia. Accordingly, we affirm the trial court's conviction.

Affirmed.