Present:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 032765  OPINION BY JUSTICE CYNTHIA D. KINSER
                                      November 5, 2004
GEORGE HALCOTT NORMAN, III

FROM THE COURT OF APPEALS OF VIRGINIA


Appellee, George Halcott Norman, III, was convicted in a bench trial in the Circuit Court of Pittsylvania County of operating a motor vehicle after having been declared a habitual offender, second or subsequent offense, in violation of Code § 46.2-357.[1]  Norman appealed the conviction to the Court of Appeals of Virginia, asserting that he could not be convicted of this offense because an order of the Circuit Court of Pittsylvania County had restored his privilege to operate a motor vehicle.  A panel of the Court of Appeals affirmed the trial court's judgment.  Norman v. Commonwealth, 40 Va. App. 496, 504, 579 S.E.2d 699, 702 (2003).  Subsequently, the Court of Appeals granted Norman's petition for rehearing en banc and thereafter reversed the conviction and dismissed the

_____

[1]  Norman pled not guilty to the charge under Code § 46.2-357.  However, he pled guilty to and was convicted of possession of a firearm after having been convicted of a felony in violation of Code § 18.2-308.2; brandishing a firearm in violation of Code § 18.2-282; and operating a motor vehicle while under the influence of alcohol, second offense within five years, in violation of Code § 18.2-266. Those convictions are not before us in this appeal.

indictment. Norman v. Commonwealth, 41 Va. App. 628, 639, 587 S.E.2d 742, 747 (2003).

We awarded the Commonwealth this appeal. The sole issue is whether the order of the circuit court restoring Norman's privilege to operate a motor vehicle on the condition that he fulfill certain requirements terminated his habitual offender status. We conclude that it did not do so; therefore, there was sufficient evidence to sustain Norman's conviction. Accordingly, we will reverse the judgment of the Court of Appeals.

RELEVANT FACTS AND PROCEEDINGS

The incident leading to the conviction at issue occurred on August 14, 2001, when H. L. Gatewood, a deputy sheriff with the Pittsylvania County Sheriff's Department, was traveling eastbound on Route 57 in Pittsylvania County and noticed a particular vehicle traveling westbound. Deputy Gatewood's dispatcher had previously alerted him to be on the look out for that vehicle. Deputy Gatewood then turned his police vehicle around and proceeded to stop the identified vehicle. Norman was the driver and sole occupant of the stopped vehicle.

After getting Norman out of the vehicle and securing a weapon found in it, Deputy Gatewood asked Norman for some form of identification. Norman did not produce a driver's

2

license, but he told Deputy Gatewood that he had a "piece of paper issued by the Court" at his residence.  Deputy Gatewood took Norman to the residence to retrieve the paper, which was a "Restricted Driver's License Order, Entry Into Alcohol Safety Action Program" entered by the Circuit Court of Pittsylvania County on May 7, 2001.  At some point during the traffic stop, Deputy Gatewood ran a check on Norman's driving status through his dispatcher.  Deputy Gatewood testified that the status came back as "suspended or revoked"; he was not sure of the actual wording.  Deputy Gatewood also asked Norman where he was going.  Norman stated that he was en route to a friend's house.

The contested issue at trial, as well as on appeal, was whether Norman's privilege to operate a motor vehicle had been fully restored so that he no longer had the status of habitual offender when Deputy Gatewood stopped him.  At trial, several pertinent orders entered by the Circuit Court of Pittsylvania County were introduced into evidence and are summarized as follows:

1.    An order dated August 30, 1985, declaring Norman a habitual offender and directing him "not to operate a motor vehicle on the highways of the Commonwealth of Virginia."

2.    An order dated October 13, 1989, sentencing Norman for a conviction, based on his guilty plea, of the

3

offense of operating a motor vehicle after having been declared a habitual offender.

3.    An order dated December 20, 1999, adjudicating Norman's petition for restoration of his privilege to operate a motor vehicle. In pertinent part, the order stated:

> Accordingly, the prayer of the petition should be granted, subject to the conditions set forth below in that the petitioner is no longer addicted to, or psychologically dependant upon, the use of alcohol or drugs; that the petitioner is not a threat to the health and safety of others or to himself; . . . it is ORDERED that pursuant to [Code] § 46.2-360 . . . the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and they are hereby restored to George Halcott Norman, III.
>
> It is further ORDERED that this is not a license or privilege to drive in itself; that the petitioner shall present himself and this Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required, and further, that the petitioner is referred to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of this Order; that the petitioner shall not possess or use alcohol, alcoholic beverages or drugs . . . ; that should the petitioner incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to the petitioner to show cause why his privilege to drive should not be suspended permanently.

4.    An order dated May 4, 2001, finding that Norman had violated the terms of the December 20, 1999 order. The circuit court granted Norman a "restricted

permit to drive," allowing Norman to operate a vehicle "only to and from his place of employment, during the course of employment, to and from Dan River ASAP meetings, and to and from medical providers for himself and his mother." The restrictions were to be in effect for a period of 12 months, and the order further provided that, if Norman had any violations of law, including any alcohol or drug related offenses, during the 12-month period, the court would revoke his privilege to operate a motor vehicle.

5.    A restricted driver's license order[2] issued on May 7, 2001, stating that "[y]ou seek a restricted license after having been declared [a] habitual offender." The restrictions set forth in the order were in accordance with the May 4, 2001 order. Norman signed the order acknowledging that he understood its contents.

Based on these orders, the Court of Appeals held that the Commonwealth failed to prove that Norman was a habitual offender when he drove a vehicle on August 14, 2001. Norman, 41 Va. App. at 639, 587 S.E.2d at 747. The Court of Appeals reasoned that Code § 46.2-360(1) does not distinguish between a " 'full restoration' " and a " 'conditional restoration' " and that the December 20, 1999 order restored Norman's privilege to operate a motor vehicle. Id. at 636-37, 587 S.E.2d at 745-46. The fact that the circuit court attached certain conditions to Norman's privilege to operate a motor vehicle and retained the authority to enforce those conditions did not alter the

---

[2] This is the same restricted driver's license order that Norman provided to Deputy Gatewood.

conclusion that the circuit court restored Norman's privilege to drive.  Id. at 637-38, 587 S.E.2d at 746.

ANALYSIS

Under the provisions of Code § 46.2-357, it is "unlawful for any person determined or adjudicated [a] habitual offender to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect."  Code § 46.2-357(A).  To establish a violation of that statute, the Commonwealth has to prove beyond a reasonable doubt that, at the time of an alleged driving offense, a defendant was adjudicated a habitual offender and his/her privilege to operate a motor vehicle was revoked.  See Rose v. Commonwealth, 265 Va. 430, 434, 578 S.E.2d 758, 760 (2003).  Whether the evidence presented by the Commonwealth was sufficient to sustain Norman's conviction under Code § 46.2-357 turns on the effect of the December 20, 1999 order.

The Commonwealth argues that, although the December 20, 1999 order restored Norman's privilege to operate a motor vehicle, the restoration was subject to certain conditions, the violation of which would result in Norman's loss of driving privileges again.  Thus, Norman's adjudication as a habitual offender remained "in effect"

6

within the intendment of Code § 46.2-357, meaning that he was properly convicted under that statute.  The Commonwealth also argues that the terms of the May 7, 2001 restricted driver's license order reflect that the circuit court intended-and Norman understood-that he was still classified as a habitual offender.  Norman's signature on the license acknowledged that he had been adjudicated a habitual offender and was seeking "a restricted license after having been declared [a] habitual offender."

Norman asserts that, pursuant to Code § 46.2-360(1), a circuit court has three choices when a habitual offender petitions to have the privilege to operate a motor vehicle restored: (1) deny the petition; (2) restore the privilege to drive with or without conditions; or (3) issue a restricted license.  Norman contends, and the Commonwealth does not disagree, that the circuit court did not issue a restricted license in its December 20, 1999 order.  Thus, according to Norman, the circuit court's order restored his full privileges to operate a motor vehicle, meaning that his status as a habitual offender was no longer in effect. Norman further argues that, when he violated the conditions set forth in the December 20, 1999 order, his privilege to drive reverted back to a restricted privilege as reflected

7

in the May 7, 2001 restricted license order, but that his status did not revert back to that of a habitual offender.

If Norman's interpretation of the December 20, 1999 order is correct, there was not sufficient evidence, as a matter of law, to find him guilty of driving after having been declared a habitual offender. Conversely, if the Commonwealth's view prevails, there was sufficient evidence, as a matter of law, to sustain Norman's conviction. In viewing the sufficiency of the evidence, we are required to consider "the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Commonwealth v. Hill, 264 Va. 541, 543, 570 S.E.2d 805, 806 (2002).

When a person is determined to be or adjudicated a habitual offender, a license to operate a motor vehicle shall not be issued to that person for a period of ten years from the date of such determination or adjudication and not until the privilege to operate a motor vehicle has been restored by a court order in one of several statutorily prescribed proceedings. Code § 46.2-356. Thus, unless the terms of an order adjudicating habitual offender status specifically limit the duration of the

8

effect of the order, see Davis v. Commonwealth, 12 Va. App. 246, 248-49, 402 S.E.2d 711, 712-13 (1991), "the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and [the] privilege to drive restored under one of the code sections permitting such petitions." Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000); see also Sink v. Commonwealth, 28 Va. App. 655, 659, 507 S.E.2d 670, 672 (1998) (only a court of competent jurisdiction can restore a habitual offender's privilege to operate a motor vehicle in Virginia). One of the statutory provisions authorizing a proceeding to restore the privilege to operate a motor vehicle is Code § 46.2-360, the section Norman utilized.

In pertinent part, Code § 46.2-360(1) allows a habitual offender, five years from the date of the adjudication or determination of habitual offender status, to petition a circuit court to restore the privilege to operate a motor vehicle. After making certain findings not relevant to this appeal, "the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe." In lieu of restoring the person's

privilege to operate a motor vehicle, the court may issue a restricted license.  Code § 46.2-360(1).

In this case, the circuit court restored Norman's privilege to operate a motor vehicle.  However, the restoration of driving privileges was "subject to the conditions" set out in the court's December 20, 1999 order and Norman's fulfilling those conditions.  The court further provided that, if Norman incurred an alcohol or drug-related offense during the 12-month supervision period specified in the order, it could issue process to show cause why Norman's privilege to operate a motor vehicle should not be "suspended permanently."

Based on the provisions of Code § 46.2-360 authorizing a circuit court to restore a person's privilege to operate a motor vehicle on whatever conditions the court may prescribe, we conclude that the December 20, 1999 order did not fully restore Norman's privilege to operate a motor vehicle.  Instead, the restoration of driving privileges was subject to the conditions imposed by the circuit court, which Norman had to abide by for a period of 12 months. During that period, his privilege to operate a motor vehicle thus remained under the control of the circuit court.  Only upon his satisfying the specified conditions would Norman's privilege to operate a motor vehicle be

10

restored in full and his status as a habitual offender removed. It does not follow that Norman's privilege to operate a motor vehicle could be fully restored while that restoration remained contingent upon his satisfying the conditions imposed by the circuit court. As we said in Varga, "the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and [the] privilege to drive restored." 260 Va. at 551, 536 S.E.2d at 714; see also Sink, 28 Va. App. at 659, 507 S.E.2d at 672.

Our conclusion is consistent with the language of Code § 46.2-360(1). Under that statute, a circuit court may restore a habitual offender's privilege to operate a motor vehicle with or without conditions or issue a restricted license. By authorizing a circuit court to restore the privilege on whatever conditions the court may prescribe, the General Assembly did not intend for a restoration of driving privileges subject to court-imposed conditions to have the same legal effect as a restoration without any conditions. Obviously, when the conditions are fulfilled, a complete restoration is then effected. In contrast, if a circuit court chooses to issue a restricted license instead of restoring the privilege with conditions, that restricted

11

license will never mature into a full restoration of driving privileges.

Thus, at the time of the offense at issue, Norman's status as a habitual offender remained in effect.[3]  The circuit court terminated the conditional restoration of Norman's privilege to operate a motor vehicle in the order of May 4, 2001, finding that Norman had violated the terms of the December 20, 1999 order.  Norman acknowledges, and we agree, that, when a circuit court issues a restricted license in lieu of restoring the privilege to operate a motor vehicle, with or without conditions, an individual's status as a habitual offender continues.  See Travis v. Commonwealth, 20 Va. App. 410, 414-15, 457 S.E.2d 420, 422 (1995).  Similarly, when the circuit court terminated Norman's conditional restoration of his privilege to drive and issued a restricted license order, his status as a habitual offender continued.  Contrary to Norman's argument, our decision does not mean a habitual offender always remains a habitual offender.  If Norman had fulfilled the conditions imposed by the circuit court in the December 20, 1999 order, his driving privileges would

---

[3]  Although not dispositive, Norman acknowledged, when executing the May 7, 2001 restricted driver's license order, that he had been adjudicated a habitual offender and was seeking a restricted license after having been declared a habitual offender.

12

have been fully restored and his habitual offender status would have been terminated at that time.

CONCLUSION

For these reasons, we hold that there was sufficient evidence to support Norman's conviction under Code § 46.2-357.  At the time of the charged driving offense, he was a habitual offender and the revocation of his privilege to operate a motor vehicle remained in effect.  Accordingly, we will reverse the judgment of the Court of Appeals of Virginia and reinstate Norman's conviction.

<u>Reversed and final judgment</u>.

JUSTICE AGEE, with whom JUSTICE KOONTZ joins, dissenting.

In determining that the December 20, 1999 order restoring Norman's privilege to drive did not terminate Norman's status as a habitual offender, the majority does not follow the plain language of the statute and the plain language of the order.

The circuit court's December 20, 1999 order is unequivocal:

> [F]or good cause shown the suspension effective pursuant to said order of April 12, 1984 should be removed and the driving privileges restored, it is so ORDERED.
> Accordingly . . . it is ORDERED that pursuant to § 46.2-360 . . . the privileges to operate a motor vehicle in the Commonwealth of Virginia should be restored and <u>they are hereby restored</u> to George Halcott Norman, III.

13

(Emphasis added).

With unmistakable clarity, the circuit court granted Norman's petition and restored his privilege to drive. At that time, Norman ceased to have the status of a habitual offender because it had been removed.

> [T]he habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.

Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000).

As the Court of Appeals noted, upon a habitual offender's petition to restore driving privileges, the circuit court may grant the petition in only one of two ways under Code § 46.2-360(1):

> [(1)] restore the person's privilege to drive, with or without conditions enforceable by the court; or [(2)] authorize the issuance of a restricted license. The statute draws no distinction between a "full restoration" and a "conditional restoration." Hence, an individual's privilege to drive is either restored or not restored under Code § 46.2-360(1).

Norman v. Commonwealth, 41 Va. App. 628, 636, 587 S.E.2d 742, 745 (2003). The language of the statute makes clear that there are but two alternatives: "The

14

court may, <u>in lieu of restoring the person's privilege to drive</u>, authorize the issuance of a restricted license . . . "  Code § 46.2-360(1) (emphasis added). There is no doubt that a restricted license was not issued.  Consequently, there is simply no language in the statute that makes the termination of habitual offender status uncertain once the circuit court restores the petitioner's privilege to drive.

The majority, however, creates a third option: a restoration of driving privileges with conditions which, upon fulfillment, "mature[s] into a full restoration of driving privileges," a sort of executory habitual offender status.  The majority confirms this third option upon the assumption that "the General Assembly did not intend for a restoration of driving privileges subject to court-imposed conditions to have the same legal effect as a restoration without any conditions."

I do not find that assumption within the plain language of the statute.  "When the language in a statute is clear and unambiguous, the courts are bound by the plain meaning of that language."  <u>Blake Constr. Co./Poole & Kent v. Upper Occoquan Sewage Auth.</u>, 266 Va. 564, 575, 587 S.E.2d 711, 717 (2003) (citation omitted).  Courts cannot "add language to the statute the General Assembly has not

15

seen fit to include." Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003). "[N]or are they permitted to accomplish the same result by judicial interpretation." Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (internal quotation marks omitted).

When the circuit court ordered that Norman's driving privileges "are hereby restored," his status as a habitual offender terminated. Accordingly, I respectfully dissent and would affirm the judgment of the Court of Appeals to reverse Norman's conviction and dismiss the indictment.